J-A11007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID L. PATTON | |
| Appellant | No. 1973 WDA 2012 |

Appeal from the Judgment of Sentence of November 6, 2012
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): 543 CR 2010

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID L. PATTON, | |
| Appellant | No. 1974 WDA 2012 |

Appeal from the Judgment of Sentence of November 6, 2012
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): 543 CR 2010, 148 CR 2011

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E. and OLSON, J.

MEMORANDUM BY OLSON, J.:　　　　　　**FILED SEPTEMBER 19, 2014**

Appellant, David L. Patton, appeals from the judgment of sentence entered on November 6, 2012.  We affirm.

In 2010, Appellant was arrested and charged with over 100 counts of theft.  The Commonwealth premised all of the theft counts upon the allegation that Appellant had abused a general durable power of attorney,

which named him the agent for his 86-year-old aunt, Betty Wetzel. Specifically, the Commonwealth alleged, Appellant had abused the power of attorney by stealing over $200,000.00 from Ms. Wetzel's accounts and using the money for Appellant's own benefit.[1]

The general durable power of attorney at issue here was executed on January 11, 2007, in Venango County, Pennsylvania, and provided, in relevant part:

NOTICE

The purpose of this power of attorney is to give the person you designate (your "agent") broad powers to handle your property, which may include powers to sell or otherwise dispose of any real or personal property without advance notice to you or approval by you.

This power of attorney does not impose a duty on your agent to exercise granted powers, but when powers are exercised, your agent must use due care to act for your benefit and in accordance with this power of attorney.

Your agent may exercise the powers given here throughout your lifetime, even after you become incapacitated, unless

---

[1] We note that on February 11, 2011, the Commonwealth filed a second information against Appellant, wherein the Commonwealth charged Appellant with additional theft counts. However, as was true with the earlier information, the theft counts in the second information were based upon the allegation that Appellant had abused the power of attorney over Ms. Wetzel. Therefore, the trial court consolidated the two cases by order entered May 2, 2011. Trial Court Order, 5/2/11, at 1. For ease of discussion, we will omit any reference to either the pre-trial proceedings or the pre-trial motions at the second case number.

you expressly limit the duration of these powers or you revoke these powers or a court acting on your behalf terminates your agent's authority.

Your agent must keep your funds separate from your agent's funds.

A court can take away the powers of your agent if it finds your agent is not acting properly.

The powers and duties of an agent under a power of attorney are explained more fully in 20 Pa.C.S. Ch. 56.

If there is anything about this form that you do not understand, you should ask a lawyer of your own choosing to explain it to you.

I have read or had explained to me this notice and I understand its contents.

(signature)
Betty M. Wetzel, Principal


REVOCATION AND APPOINTMENT OF
POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I, Betty M. Wetzel . . . do hereby . . . make, constitute and appoint [Appellant] . . . my true and lawful agent, for me and in my name and on my behalf.

To draw checks against my account in any bank, trust company or savings and loan association in which I have any monies deposited, for all or any part of the money now or hereafter deposited in said bank, trust company or savings and loan association, or which may stand to my credit on the books thereof; to endorse notes, checks, drafts, and bills of exchange, including, but not limited to, checks of the United States Government, the Department of Health and Welfare of the United States, and any check payable to me issued by the Commonwealth of Pennsylvania, which may require my endorsement for the

deposit as cash, or for collection in any bank in which I may have money deposited;

. . .

To pay, compromise and settle all debts which I may owe or which I may hereafter contract;

To make such contracts as may be necessary for my maintenance and support, and to employ such persons as nurses, housekeepers or for such other purposes as may be necessary to care for me and to provide for my needs, medical care and welfare, and to do all other things necessary or required to look after and care for me, and to pay out of my funds and estate all debts, accounts and expenses which may be contracted in providing for my needs, comfort, health and welfare;

. . .

To execute and otherwise deliver any beneficiary statement or change of beneficiary form associated with any policy of insurance pension plan or employee benefit or savings plan of any type;

. . .

To transact all business and to do, execute and perform all things in my behalf as fully, largely and amply to all intents and purposes as I myself might or could do if personally present. . . .

. . .

To the extent that the following powers may not explicitly be set forth hereinabove, I further hereby grant to my said agent the following powers:

(1) To make limited or unlimited gifts.

. . .

(14) To engage in banking and financial transactions.

. . .

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 11th day of January, 2007.

(signature)_____
Betty M. Wetzel

. . .

I, [Appellant], have read the attached power of attorney and am the person identified as the agent for the principal. I hereby acknowledge that in the absence of a specific provision to the contrary in the power of attorney or in 20 Pa.C.S. when I act as agent:

I shall exercise the powers for the benefit of the principal.

I shall keep the assets of the principal separate from my assets.

I shall exercise reasonable caution and prudence.

I shall keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

(signature)_____
David L. Patton, Agent

Power of Attorney, 1/11/07, at 1-4 (some internal capitalization omitted).

During the preliminary hearing, the Commonwealth presented the testimony of Ms. Wetzel. Ms. Wetzel testified that she did not authorize Appellant to transfer any money from her accounts into Appellant's own, personal accounts and that she did not authorize Appellant to take her money and spend it for Appellant's own, personal benefit. N.T. Preliminary

Hearing, 10/28/10, at 38-41.[2] Moreover, Ms. Wetzel testified that, because of Appellant's actions, she now has "no money at all" and that she received no benefit from Appellant's transactions. *Id.* at 38-43.

At the conclusion of the preliminary hearing, the magisterial district judge bound Appellant over for court on all charges. *Id.* at 63.

On January 14, 2011, Appellant filed an omnibus pre-trial motion and claimed that the trial court must quash the information because: 1) the power of attorney authorized Appellant to make "unlimited gifts" of Ms. Wetzel's assets – and, therefore, the power of attorney allowed Appellant to empty Ms. Wetzel's bank accounts and "gift" the money to Appellant individually; and, 2) Pennsylvania has no law that criminally punishes the abuse of a power of attorney. Appellant's Omnibus Pre-Trial Motion, 1/14/11, at 1-6.

On May 2, 2011, the trial court held a hearing on Appellant's pre-trial motion, during which time Appellant presented the testimony of attorney David P. Brandt (hereinafter "Attorney Brandt") as both a lay and an expert witness in the case. *See*, *e.g.*, *Commonwealth v. Huggins*, 68 A.3d 962, 967 (Pa. Super. 2013) ("the [Pennsylvania Rules of Evidence] do not

_____

[2] The transcript of the preliminary hearing states that the hearing took place on October 28, 2009. However, it is clear that the preliminary hearing occurred on October 28, 2010. *See*, *e.g.*, Subpoena to Betty Wetzel, 10/21/10, at 1 (declaring that Ms. Wetzel was ordered to appear for the October 28, 2010 preliminary hearing).

preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness"). As Attorney Brandt testified, he drafted the relevant power of attorney in this case and he also "practice[s] extensively in [the field of] durable powers of attorney." N.T. Pre-Trial Motion, 5/2/11, at 19-20. The Commonwealth did not object to Attorney Brandt's lay testimony and the trial court accepted Attorney Brandt as an expert in "the [field] of powers of attorney." *Id.* at 20-21.

Attorney Brandt testified that, when he drafts a power of attorney, he always includes the provision granting the agent the power "to make limited or unlimited gifts." *Id.* at 27. Further, on direct examination, Attorney Brandt testified that the phrase "to make limited or unlimited gifts" is "completely unconditional" – the phrase "enables an agent to do anything that the principal can do" and it does not "limit to whom a gift can be made." *Id.* at 26. Attorney Brandt also testified that, when he drafted the power of attorney in this specific case, he "explained to Ms. Wetzel this power of attorney would enable [Appellant] to do anything that she could do." *Id.*

However, on cross-examination, Attorney Brandt retreated from his testimony that the gift-giving authority in the power of attorney was "completely unconditional." Indeed, on cross-examination, Attorney Brandt testified that the power of gift-giving – like every authority in the power of attorney – is subject to the condition that the agent "exercise the power[] for the benefit of the principal." *Id.* at 30-31.

The trial court denied Appellant's pre-trial motion on July 7, 2011.

On February 24, 2011, the Commonwealth filed a motion to preserve Ms. Wetzel's testimony and, on June 27, 2011, the parties deposed Ms. Wetzel. During this deposition, Ms. Wetzel testified consistently with her preliminary hearing testimony. *See* N.T. Betty Wetzel Deposition, 6/27/11, at 28-29, 31-36, and 37-38.

The case proceeded to a non-jury trial on August 27, 2012, where the case was tried by stipulated evidence. With respect to the Commonwealth's case, the Commonwealth introduced (and Appellant stipulated to) the following evidence: 1) the Commonwealth's proposed expert witness, Linda S. Mill, is "qualified as an expert in the field of accounting and fraud examination;" 2) Ms. Mill's expert report is admitted in its entirety; 3) if called to testify, Ms. Mill would testify consistently with her expert report, wherein Ms. Mills concluded that Appellant removed "$282,905.55 in funds [] from Ms. Wetzel's accounts . . . without any authorization by or apparent benefit to Ms. Wetzel," that Appellant misappropriated all of those funds, that Appellant deposited only $5,761.35 in Ms. Wetzel's accounts, that Appellant caused Ms. Wetzel a net loss of $277,144.20, and that Appellant used the $277,144.20 for Appellant's own benefit; 4) Ms. Wetzel's June 24, 2011 deposition testimony "is true and accurate and if [she] were to testify at trial her testimony would be consistent with that contained in [the] transcript;" 5) the "financial records submitted by the Commonwealth are true and accurate copies of [f]inancial documents from accounts belonging to Betty Wetzel and/or [Appellant];" and, 6) the transcripts from the

preliminary hearings that occurred in the case are admitted and "all individuals testifying at those hearings would testify consistently if called at [t]rial." N.T. Trial, 8/27/12, at 17-18; Expert Report of Linda S. Mill, 4/4/12, at 1-7. The Commonwealth then rested its case.

Appellant presented his case by introducing the following stipulated evidence. First, the parties stipulated that, were Appellant to testify at trial, Appellant would testify to the following: 1) he is Ms. Wetzel's nephew; 2) Ms. Wetzel "had no living husband nor did she have any children during her lifetime and [she] was a widow at the time of execution of her [p]ower of [a]ttorney on January 11, 2007;" 3) Appellant believed that he did not "unlawfully [take] or exercise[] unlawful control over any property of Betty Wetzel with the intent to deprive her of said property;" 4) Appellant believed he "made all appropriate payments and/or dispositions of any property of Betty Wetzel that came into his possession and control and said payments and dispositions were all made pursuant to the power granted to him by Betty Wetzel" in the power of attorney; 5) Appellant believed that he, "at no time, intentionally, knowingly, recklessly[,] or negligently violated the provisions of [the power of attorney] and at no time felt as though he was in violation of any criminal statute;" 6) Appellant believed that did not "attempt to engage in conduct that was [] outside the scope of his authority;" and, 7) Appellant believed that he did not "intend to violate any provisions of the Pennsylvania Crimes Code relative to his conduct as the agent of Betty

Wetzel."[3]   N.T. Trial, 8/27/12, at 22; Appellant's Proposed Stipulations, 6/28/12, at 1-6.

During Appellant's case, the parties also stipulated to the May 2, 2011 testimony of Attorney Brandt and certain numbered statements from Ms. Mill.  N.T. Trial, 8/27/12, at 24-27.  Appellant then rested his case.

By order entered September 18, 2012, the trial court found Appellant guilty of 95 counts of theft by unlawful taking[4] and 95 counts of theft by

_____

[3] Throughout Appellant's brief to this Court, Appellant claims that the Commonwealth stipulated that the substance of Appellant's declarations was true.  **See** Appellant's Brief at 27-28, 34-35, and 50-51.  Appellant's claim constitutes a misreading of the record evidence.  Certainly, the Commonwealth stipulated to only the fact that, if Appellant were to testify at trial, Appellant **would testify to** the above-summarized declarations – but that the above declarations were not necessarily true.  Counsel for the Commonwealth declared:

> I think the document is clear, but I want to make clear for the record all those proposed stipulations are what [Appellant] would testify to were he to testify. . . .  [T]he Commonwealth is not agreeing they're necessarily true, but that [Appellant] would [so] testify.

N.T. Trial, 8/27/12, at 23-24.

Therefore, any claim based upon the faulty assertion that the Commonwealth stipulated to the substance of Appellant's proposed testimony necessarily fails; the Commonwealth stipulated to only the fact that Appellant "would testify to" the listed declarations.

[4] 18 Pa.C.S.A. § 3921(a) defines theft by unlawful taking or disposition as follows:

*(Footnote Continued Next Page)*

- 10 -

failure to make required disposition of funds received.[5]  Trial Court Order, 9/18/12, at 1.  On October 24, 2012, the trial court sentenced Appellant to an aggregate term of 30 to 60 months in prison for the above convictions. The trial court then issued an amended sentencing order on November 6, 2012, but the amended order did not alter the trial court's original sentencing scheme.  Trial Court Order, 11/6/12, at 1.

Appellant filed a timely notice of appeal and the trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

_____

*(Footnote Continued)* ————————————————

> A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).

[5] 18 Pa.C.S.A. § 3927(a) defines theft by failure to make required disposition of funds received as follows:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition.  The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a).

J-A11007-14

Appellant complied and listed the following claims in his Rule 1925(b) statement:

> [1.] Omnibus [p]retrial [m]otions for [r]elief were filed in [the case]. The [trial c]ourt denied the relief sought and therefore [] Appellant challenges those denials and challenges as well all issues that were raised in the [o]mnibus [m]otions and were denied as well as all subsidiary issues contained therein. . . .
>
> [2.] At the suggestion, request[,] and insistence of the [d]istrict [a]ttorney, [the case was] tried by [the trial court] without a jury and further, at the request and insistence of the [d]istrict [a]ttorney's [o]ffice, the matter was submitted to the [trial court] for a bench trial on stipulated facts submitted to the [trial court] by the Commonwealth and [Appellant] and approved by the opposing party. Such stipulations were introduced at the trial of this matter and were to be the basis for the [trial court's] findings and ultimate verdict. It is submitted that [the trial court] failed to consider the stipulation of facts as submitted, especially those of [Appellant] which clearly indicate a full uncontroverted defense and which stipulated set of facts clearly show the [trial court's] verdict in this matter was in error. The submitted stipulation of facts by [] Appellant in this matter was approved by the Commonwealth and at no time challenged any said stipulated facts and as such, admitted to their truthfulness. [The trial court] erred in not considering those stipulations and the significance of the same.
>
> [3.] [The trial court] erred in failing to rule that the [p]ower of [a]ttorney executed by Betty Wetzel in this matter authorized her [a]gent, [Appellant], to make limited as well as unlimited gifts under the "[s]pecial [r]ules" pursuant to Title 20 of the Pennsylvania Consolidated Statutes. The [trial court] erred also in failing to rule that if there was a violation by the agent in the [p]ower of [a]ttorney, then the appropriate remedy would be removal from that position rather than criminal sanctions which are not provided for by statute in this Commonwealth. No such criminal action can be maintained and the singular remedy provided is for

- 12 -

removal of the [a]gent by the [p]rincipal or someone acting on behalf of the [p]rincipal. The [p]ower of [a]ttorney as prepared and executed by Betty Wetzel is by reference hereto made a part hereof. In addition, [the trial court] erred in failing to hold that [Appellant] was acting within the scope of and pursuant to the authority granted him pursuant to the aforesaid [p]ower of [a]ttorney.

[4.] [The trial court] erred by relying on unreported and unprecedented decisions on which the [trial court] based its verdict in this matter.

[5.] The evidence presented in the non-jury trial of this matter was insufficient to support the verdict of [the trial court]. In viewing all of the evidence admitted at the trial of this matter, especially that submitted by stipulation and viewing that evidence in the light most favorable to the Commonwealth which is and was insufficient evidence to enable you, [the trial court], as [f]act [f]inder, to find each and every element of the crimes charged beyond a reasonable doubt.

Appellant's Rule 1925(b) Statement, 12/10/12, at 2-5.

Appellant now raises the following claims to this Court:

1. Whether, viewing all of the evidence admitted at the trial of this matter, especially that submitted by stipulation, and viewing that evidence in the light most favorable to the Commonwealth, there was sufficient evidence to find each and every element of the crimes charged beyond a reasonable doubt?

2. Whether the trial court erred and violated Appellant's due process right to fair notice in failing to rule that the [p]ower of [a]ttorney executed by Betty Wetzel in this matter authorized her [a]gent, [] Appellant, to make both limited and unlimited gifts under the "[s]pecial [r]ules" pursuant to Title 20 of the Pennsylvania Consolidated Statutes?

3. Whether the trial court erred in failing to rule that if there was a violation by the [a]gent in the [p]ower of [a]ttorney, then the appropriate remedy would be removal from that

position rather than criminal sanctions which are not provided for by statute in this Commonwealth?

4. Whether the trial court erred in denying Appellant's omnibus pretrial motions for pretrial relief where the Commonwealth failed to establish a *prima facie* case that [Appellant] committed theft by making gifts under an unlimited gift power of attorney and criminal prosecution of Appellant violates his due process right to fair notice?

5. Whether the trial court erred by relying on unreported, non-precedential decisions in reaching its verdict in this matter?

Appellant's Brief at 8-9.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the well-written opinions of the able trial judge, the Honorable James G. Arner. We conclude that there has been no error in this case and that the trial court's opinions, filed on July 6, 2011, September 18, 2012, and February 13, 2013, meticulously and accurately dispose of Appellant's claims on appeal. Therefore, we affirm on the basis of the trial court's opinions and adopt them as our own. In any future filings with this or any other court addressing this ruling, the filing party shall attach copies of the trial court's opinions.

Further, and although the trial court has thoroughly explained the reasons why Appellant's claims fail, we note the following. First, Appellant claims that the evidence was insufficient to support his theft convictions because: 1) the unlimited gift provision in the power of attorney allowed Appellant to self-gift all of Ms. Wetzel's money to Appellant individually; 2) the Commonwealth stipulated to the substance of Appellant's declaration

that Appellant, as Ms. Wetzel's agent, was not required to use the gift-giving power for Ms. Wetzel's benefit; and, 3) even if Appellant's actions were not authorized, Appellant lacked the necessary *mens rea* to commit the theft crimes because he was acting under a power of attorney. **See** Appellant's Brief at 26-46.

At the outset, we note that Appellant's Rule 1925(b) statement broadly and generically claimed that the evidence was insufficient to support his convictions. Appellant's statement simply declared:

> The evidence presented in the non-jury trial of this matter was insufficient to support the verdict of [the trial court]. In viewing all of the evidence admitted at the trial of this matter, especially that submitted by stipulation and viewing that evidence in the light most favorable to the Commonwealth which is and was insufficient evidence to enable you, [the trial court], as [f]act [f]inder, to find each and every element of the crimes charged beyond a reasonable doubt.

Appellant's Rule 1925(b) Statement, 12/10/12, at 4.

Normally, this generic statement would require that we find Appellant's entire sufficiency of the evidence claim waived on appeal. **See Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient"). Nevertheless, Appellant argued throughout the lower court proceedings that the power of attorney explicitly authorized his actions in

- 15 -

this case. Moreover, in Appellant's Rule 1925(b) statement, Appellant claimed that he could not have been criminally prosecuted for theft because he "was acting within the scope of and pursuant to the authority granted him pursuant to the aforesaid [p]ower of [a]ttorney." Appellant's Rule 1925(b) Statement, 12/10/12, at 3-4. Finally, when the trial court discussed Appellant's sufficiency of the evidence claim in its opinion, the trial court was able to discern that the basis of Appellant's claim was that the power of attorney explicitly authorized Appellant's actions. Trial Court Opinion, 2/13/13, at 9. Therefore, we conclude that Appellant has preserved the first sub-issue of his sufficiency of the evidence claim: that the evidence was insufficient to sustain his theft convictions because the unlimited gift provision in the power of attorney explicitly allowed Appellant to self-gift all of Ms. Wetzel's money to Appellant individually. However, we conclude that Appellant has waived his second and third sub-issues, as Appellant failed to include the claims in his Rule 1925(b) statement and the trial court was unable to "apprehend [the] claim and address it" in its opinion.[6] ***See Commonwealth v. Laboy***, 936 A.2d 1058 (Pa. 2007).

_____

[6] Further, even if Appellant preserved the second sub-issue in his first appellate claim, the claim fails. With respect to the second sub-issue of Appellant's first claim, Appellant claims that the evidence was insufficient to support his convictions because, at trial, the Commonwealth stipulated to the substance of Appellant's declaration that Appellant, as Ms. Wetzel's agent, was not required to use the gift-giving power for Ms. Wetzel's benefit. As we have already explained, this claim fails because it is factually
*(Footnote Continued Next Page)*

- 16 -

Simply stated, we reject Appellant's bold claim that the "unlimited gift" provision in the power of attorney provided Appellant with a license to steal Ms. Wetzel's assets and use all of her money for Appellant's own benefit. To the contrary, the gifting power was clearly subject to the condition that Appellant use the power "for [Ms. Wetzel's] benefit" – and Appellant clearly violated this condition when he took all of Ms. Wetzel's money and used it as if it was his own. Therefore, since Appellant's actions were not authorized by the power of attorney, Appellant's sufficiency of the evidence claim necessarily fails.

For Appellant's second claim on appeal, Appellant contends that the theft convictions violated his due process rights because he was not given fair notice that his actions were criminal. According to Appellant, "[t]here is nothing in the statutes or in prior reported decisions to indicate that self-gifts could amount to theft under an unlimited gift power of attorney." Appellant's Brief at 47. This claim is waived, as Appellant failed to include the claim in his Rule 1925(b) statement. Pa.R.A.P. 1925(b)(4)(iv) ("[i]ssues not included in the [Rule 1925(b)] Statement . . . are waived"). Further, even if the claim were not waived, the claim fails, as we have long held that

_(Footnote Continued)_ ───────────────

baseless: the Commonwealth **did not** stipulate that the substance of Appellant's declarations was true. The Commonwealth only stipulated that "all those proposed [declarations] are what [Appellant] would testify to were he to testify. . . . [T]he Commonwealth is not agreeing they're necessarily true, but that [Appellant] would [so] testify." N.T. Trial, 8/27/12, at 23-24

- 17 -

a fiduciary "can be convicted of an embezzlement-type offense . . . [such as] 18 Pa.C.S.A. § 3927 [(theft by failure to make required disposition of funds received)] . . . if he or she misappropriates funds for a use inconsistent with the purpose for which the funds are held." **Commonwealth v. Coward**, 478 A.2d 1384, 1387 (Pa. Super. 1984).

In the case at bar, the power of attorney provided Appellant with the power to make "unlimited gifts" of Ms. Wetzel's assets – but the power was subject to the condition that Appellant "exercise the power[] for the benefit of" Ms. Wetzel. Power of Attorney, 1/11/07, at 1-4. Appellant exceeded this authority – and "misappropriate[d Ms. Wetzel's] funds for a use inconsistent with the purpose for which the funds [were being] held" – when he used the power of attorney as if it were a license to steal. **Coward**, 478 A.2d at 1387. In doing so, Appellant subjected himself to prosecution for theft by unlawful taking and theft by failure to make required disposition of funds received. Appellant's due process claim fails.

Third, Appellant claims that the trial court "erred in failing to rule that if there was a violation by Appellant in the power of attorney, then the appropriate remedy would be removal from that position and not criminal sanctions." According to Appellant, he should not have been criminally prosecuted, as "Pennsylvania has no criminal statute specifically governing the misuse of a power of attorney." Appellant's Brief at 52. This claim fails because Appellant was prosecuted under the theft statutes – and, as was

explained above, we have long held that a fiduciary "can be convicted of an embezzlement-type offense . . . [such as] 18 Pa.C.S.A. § 3927 [(theft by failure to make required disposition of funds received)] . . . if he or she misappropriates funds for a use inconsistent with the purpose for which the funds are held." **Coward**, 478 A.2d at 1387.[7]

Next, Appellant claims that the trial court erred in denying his omnibus pre-trial motion. This claim is based upon the argument that Appellant's actions were authorized by the power of attorney and that he did not have "fair notice" that his actions constituted crimes. Appellant's Brief at 57. As was explained above, these claims fail.

Finally, Appellant claims that the trial court erred when it "rel[ied] on unreported, non-precedential decisions in reaching its verdict in this matter." **Id.** at 58. Appellant has not explained how this action caused him prejudice. As a result, Appellant is not entitled to relief on this claim.

Judgment of sentence affirmed. Jurisdiction relinquished.

_____

[7] Any claim that Appellant's convictions were in violation of "the rule of lenity and strict construction of criminal statutes" is waived, as Appellant did not include any such claim in his Rule 1925(b) statement. **See** Appellant's Brief at 54.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/2014

IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : 
                             :         CRIMINAL DIVISION
        vs.                     :
                             :         543 CR 2010
DAVID L. PATTON            :         148 CR 2011

OPINION AND ORDER OF COURT

Arner, J.                                                 July 6, 2011

## I. Background

The Commonwealth alleges that David Patton used a power of attorney which an elderly woman gave him to take large sums of her money for his own benefit. The Commonwealth has charged the Defendant with numerous theft offenses. In response, Patton has filed an Omnibus Pretrial Motion seeking to quash the Commonwealth's Information at case 543 CR 2010 for the reasons that he was acting lawfully pursuant to powers granted to him to make unlimited gifts, the law does not provide for criminal sanctions, and his due process rights were violated because he had no notice that his actions would be considered criminal.

This court held a hearing on Defendant's Motion on May 2, 2011. At the time of that hearing, the cases at 543 CR 2010 and 148 CR 2011 were consolidated, without prejudice to the Defendant to file a separate Omnibus Motion at case 148 CR 2011. The Commonwealth did not present any evidence. The Defendant presented the testimony of David P. Brandt, Esq., an expert on the subject of powers of attorney. The attorneys made oral arguments and have now submitted briefs. This Opinion and Order deals only with the Motion filed at 543 CR 2010 on January 14, 2011.

1

## II. Issues

There are two issues before the court. First, should the court grant Defendant's motion to quash because the Commonwealth did not present any evidence at the May 2, 2011 hearing? Second, can the Commonwealth prosecute Defendant for using the power of attorney to obtain Betty Wetzel's funds for his own benefit?

## III. Facts

At case 543 CR 2010, Defendant Patton is charged with fifty-one counts of theft by unlawful taking[1] as felonies of the third degree; and fifty-one counts of theft by failure to make required disposition of funds[2] as felonies of the third degree. At case 148 CR 2011, Defendant is charged with twenty-eight counts of theft by unlawful taking as felonies of the third degree; twenty-eight counts of theft by failure to make required disposition of funds as felonies of the third degree; forty-seven counts of theft by unlawful taking as misdemeanors of the first degree; forty-seven counts of theft by failure to make required disposition of funds as misdemeanors of the first degree; eight counts of theft by unlawful taking as misdemeanors of the second degree; nine counts of theft by failure to make required disposition of funds as misdemeanors of the second degree; and one count of theft by unlawful taking as a misdemeanor of the third degree. Defendant faces a total of 270 counts of theft.

Defendant's charges originate from his use of a power of attorney granted to him by an elderly woman, Betty Wetzel. At case 543 CR 2010, the Commonwealth alleges the Defendant took approximately $124,000.00 from Wetzel's accounts between January 11, 2007 and March 15, 2010. At case 148 CR 2011, the Commonwealth alleges that he took approximately

---

[1] 18 Pa.C.S.A. § 3921(a).
[2] 18 Pa.C.S.A. § 3927(a).

2

$156,861.70 from Wetzel's accounts between January of 2007 and May of 2010. The total amount allegedly taken is $280,861.70.

At the hearing on the Defendant's Omnibus Motion, the court determined that it was the Commonwealth's burden to overcome Defendant's motion to quash the Information at case 543. The Commonwealth did not offer any evidence, but simply presented oral argument. Defendant requested the court grant the motion to quash due to the Commonwealth's lack of evidence. Defendant then presented the expert testimony of David P. Brandt, Esq. on the subject of powers of attorney.

## IV. Analysis

The Pennsylvania Superior Court has stated the standard for a motion to quash an information as follows:

> A motion to quash is an appropriate means for raising defects apparent on the face of the information or other defects which would prevent prosecution. It is neither a guilt determining procedure nor a pre-trial means for determining the sufficiency of the Commonwealth's evidence. Neither the adequacy nor competency of the Commonwealth's evidence can be tested by a motion to quash the information.

*Com. v. Finley*, 860 A.2d 132, 135 (Pa.Super. 2004), quoting *Com. v. Shaffer*, 557 A.2d 1106, 1106-1107 (Pa.Super. 1989). "The inadequacy, incompetency, or even illegality of the Commonwealth's evidence does not constitute grounds for quashing an information." *Com. v. Moser*, 476 A.2d 980, 981-982 (Pa.Super. 1984), quoting *Com. v. Meoli*, 452 A.2d 1032, 1033 (Pa.Super. 1982).

### A. Failure of Commonwealth to Present Evidence

Defendant first argues that his Motion must be granted due to the failure of the Commonwealth to present evidence at the May 2, 2011 hearing. This argument lacks merit. A motion to quash the information focuses on the legal sufficiency of the information, not the truth

3

of factual averments found therein. A determination whether to grant a motion to quash the information involves a question of law not a question of fact. Therefore, the fact that the Commonwealth did not present evidence is not fatal to its defense of the Motion. The Commonwealth's attorney presented legal arguments and a brief. Questions about inadequacies of the Commonwealth's factual allegations are not now before this court.

### B. Actions Not Criminal

Next, Defendant argues that the Information should be quashed because his actions were not criminal. According to Defendant, if this court were to assume as true all facts alleged in each Information and in the police report, such facts would not provide grounds for criminal prosecutions. Defendant argues that Pennsylvania has not criminalized self dealing through a power of attorney and further, Betty Wetzel authorized him in the power of attorney to make gifts. Defendant asserts in the alternative that even if he did violate the power of attorney, the sole remedy is civil in nature under the Decedents, Estates, and Fiduciaries Code.

In response, the Commonwealth argues that a motion to quash is not the proper approach to challenge the legality of the charges. Counsel argues that the question whether Defendant's actions were lawful is a question of fact for the jury. He says in the alternative, should the court find that the Motion is proper, the Defendant's actions were criminal because he was not acting in the best interest of Betty Wetzel and therefore, contrary to the terms of the power of attorney.

The court finds that the motion to quash is procedurally proper because the Defendant is challenging the legal basis of the charges and not the factual basis. Defendant's argument assumes that all of the factual averments in the Information are true. He argues that the Information is defective on its face because the alleged actions, if true, are not criminal. If Defendant is correct, the prosecutions should not continue.

4

Regarding the merits of Defendant's Motion, he is charged with theft by unlawful taking and theft by failing to make required disposition of funds. Those charges are defined as follows in the Crimes Code:

> § 3921. Theft by unlawful taking or disposition
>
> (a) Movable property.--A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.
>
> § 3927. Theft by failure to make required disposition of funds received
>
> (a) Offense defined.--A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. §§ 3921(a) & 3927(a).

Defendant Patton argues that due to the unlimited power of attorney given to him by Ms. Wetzel, the Commonwealth cannot prove he *unlawfully* took her funds, that he had the intent to deprive her of the funds, or that he had a legal obligation to dispose of the funds in a certain fashion. Defendant also argues that the present prosecution is a violation of his due process rights in that such prosecution is an unforeseeable judicial enlargement of the criminal statutes.

David Patton references several cases in support of his argument. He cites *Com. v. Wilkes*, 676 A.2d 266 (Pa. Super. 1996) for the proposition that this criminal prosecution is unlawful due to a lack of the required mens rea. *Wilkes* involved a business deal gone bad. The defendant attempted to purchase motor oil from a seller. However, after issuing a check in the amount necessary to purchase the oil, the defendant noticed that the oil was defective in that it was packaged in out dated promotional containers. After failing to negotiate a reduced price

with the seller, the defendant stopped payment on the check. Defendant was convicted of unlawful taking and theft by deception. The Superior Court reversed his conviction, stating:

> Upon review, we disagree with the trial court's conclusions. Rather, we find the present facts, when viewed in a light most favorable to the Commonwealth as verdict winner, reveal nothing more than a business transaction which went awry, and we are convinced that appellant did not possess the necessary *mens rea* to commit either crime. Nothing in the record justifies the use of criminal prosecution to collect a simple business debt.

*Id.* at 267. The Superior Court found that there was no evidence that the defendant in *Wilkes* did not intend to pay for the oil at the time he took possession of it. In fact, the evidence showed that the defendant issued a check at the time he took possession of the oil, the check was drawn on an account with sufficient funds to pay the check, and the check was not cancelled until several days later when negotiations for a reduced price failed.

*Wilkes* is distinguishable from the present case. *Wilkes* concerns a bad business deal, not an abuse of a power of attorney. The *Wilkes* defendant intended to pay for the oil at the time he took possession of it. The Superior Court reversed the defendant's conviction based upon his intent to pay for the oil. Defendant in the present case allegedly took money from Ms. Wetzel with no apparent intent to repay her. Therefore, the finding in *Wilkes* is based upon a key fact not in existence in the present case. If Defendant Patton took funds from Betty Wetzel with no intent to return those funds, a jury may find that he had the required mens rea for the crimes charged.

Next, Defendant cites the case *Com. v. Austin*, 393 A.2d 36 (Pa. Super. 1978). In *Austin*, the defendant was a construction contractor who accepted a large down payment on a construction job. The defendant failed to complete the construction job after working on the project for two months. After discovering that the defendant did not spend the entire down payment on materials for the project, the district attorney brought criminal charges for theft by

6

failure to make required disposition of funds received. The defendant was convicted and the Superior Court reversed his conviction. The Superior Court found that the defendant did not take property of the home owners when he accepted the down payment. The Court also found that the defendant did not violate any legal obligation to spend the down payment solely for materials for the project. The Court stated that, "[w]ith respect to the first element, 'the obtaining of the property of another,' we do not feel the acceptance of advance money on a construction contract is the property of another." *Id.* at 38.

The Defendant argues that this finding applies to the present case. Defendant asserts that he had a legal right to Wetzel's funds, just as the defendant did in Austin and therefore, he did not take property of another. Defendant's argument is without merit.

*Austin* is distinguishable from the present case for two reasons. First, *Austin* deals with a contractual agreement for the exchange of money and the present case deals with a power of attorney that creates a principal agent relationship. The Superior Court in *Austin* specifically distinguished the two types of cases. Second, the Superior Court found that the defendant in *Austin* did not intend to take the victims' money without performing the duties of the contract. Therefore, the Court found that the defendant did not fraudulently take the victims' funds. In the present case, it is alleged that Defendant took Wetzel's funds without intent to return those funds or to use them for her benefit.

Finally, Defendant cites the case of *Com. v. Wetmore*, 447 A.2d 1012 (Pa. Super. 1982). The defendant in *Wetmore* was a police chief who obtained a gun used in a suicide. The father of the suicide victim asked the defendant to dispose of the gun. The defendant did not dispose of the gun for over a year. The defendant was convicted of theft by deception and theft by unlawful disposition. The trial court granted the defendant's motion for arrest of judgment and discharged

7

him. The Commonwealth appealed and the Superior Court affirmed. The Superior Court found that although the defendant promised to dispose of the gun in a certain way, there was no clear legal duty owed to the victim's father to dispose of the gun in a particular manner. Therefore, the defendant could not be criminally prosecuted for theft by unlawful disposition.

Defendant Patton argues that *Wetmore* applies here because like the defendant in that case, he did not violate a known legal duty to Betty Wetzel. In particular, he contends that the power of attorney at issue here specifically authorizes him to make unlimited gifts. According to the Defendant, this allows him to make gifts to himself, even if such gifts were not beneficial to Betty Wetzel.

The Uniform Durable Power of Attorney Act does authorize limited and unlimited gifts if certain requirements are met. See 20 Pa.C.S.A. § 5601.2(a). Pursuant to 20 Pa.C.S.A. § 5601.2(c), entitled "unlimited gifts", a principal may authorize an agent to make a gift other than a limited gift by specifically providing for and defining the agent's authority in the power of attorney.

The power of attorney at issue in this case does not define the agent's authority to make unlimited gifts, but simply provides:

> To the extent that the following powers may not explicitly be set forth hereinabove, I further hereby grant to my said agent the following powers:
>
> (1) To make limited or unlimited gifts.
> . . . .

See Defendant's Exhibit 1, 5/2/2011 Omnibus Hearing, at page 4. Betty Wetzel could have defined Defendant Patton's authority by for example, specifying to whom the unlimited gifts could be made, when or how often the gifts could be made, and the types or amounts that could

8

be made, but she did not. The power of attorney merely allows unlimited gifts without defining the extent of Patton's authority, which does not satisfy 20 Pa.C.S.A. § 5601.2(c).

Further, the power of attorney contains a provision, whereby David Patton agreed to act for the benefit of Betty Wetzel, as follows:

> I, David L. Patton, have read the attached power of attorney and am the person identified as the agent for the principal. I hereby acknowledge that in the absence of a specific provision to the contrary in the power of attorney or in 20 Pa.C.S. when I act as agent:
>
> I shall exercise the powers for the benefit of the principal.
> I shall keep the assets of the principal separate from my assets.
> I shall exercise reasonable caution and prudence.
> I shall keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

/s/ David L. Patton           1-11-07
David L. Patton, Agent         Date

See Defendant's Exhibit 1, 5/2/2011 Omnibus Hearing, at page 5. Defendant signed this provision of the power of attorney. If Defendant Patton acted in such a way that he knew his actions were not going to benefit Wetzel and were not authorized by her, he may have violated a clear legal duty under the Uniform Durable Power of Attorney Act. See 20 Pa.C.S.A. 5601(d) and (e). Therefore, *Wetmore* is inapplicable.

Defendant next argues that the lack of any Pennsylvania reported appellate cases confirms that the misuse of a power of attorney is not a criminal act, but merely a violation of the Uniform Durable Power of Attorney Act, which may call for a civil remedy. Although there are no reported appellate cases on point, the Superior Court has issued two unreported decisions which may help guide this court's analysis.

In *Com. v. Lon H. Bingaman*, 453 MDA 2004 (Pa. Super. 2005) and *Com. v. Eileen C. Bingaman*, 457 MDA 2004 (Pa. Super. 2005), the Superior Court upheld convictions of two defendants on multiple counts of theft for taking approximately $700,000.00 from an elderly

9

aunt of one of the defendants through the use of a power of attorney. The defendants were convicted of theft by unlawful taking or disposition, theft by failure to make required disposition of funds received, and receiving stolen property. The Superior Court affirmed the convictions, reasoning as follows:

> Accordingly, the evidence was sufficient to sustain the convictions of both Eileen and Lon. The money was intended to benefit Bertha and could be reasonably construed as having been placed in convenience accounts, even though Bertha may have been aware that Eileen had the right to survivorship in the joint accounts. In the meantime, Bertha was alive at the relevant times in this case and the money was intended for her care, not intended for the luxury items benefiting Defendants. Moreover, with regard to Lon's involvement, the record establishes that large transfers of money were being made into accounts he held jointly with Eileen, that he benefited from luxury items they purchased like the two Mercedes vehicles and the RV, and that he accessed Bertha's safe deposit one time to retrieve certain of Bertha's stock certificates. The facts established on the record are sufficient to sustain the verdicts in both cases.

*Id.* at 16.

Although the *Bingaman* cases are not reported and are non-precedential, the same reasoning applies here and leads to a conclusion that misuse of a power of attorney may constitute criminal conduct in Pennsylvania.

Defendant also claims that his actions cannot be considered criminal behavior because the Uniform Durable Power of Attorney Act does not provide for criminal sanctions. The Uniform Durable Power of Attorney Act only provides for civil sanctions in the event of a violation of the power of attorney. The law provides:

> (e) Equity.--An agent and the donee of a gift shall be liable as equity and justice may require to the extent that, as determined by the court, a gift made by the agent is inconsistent with prudent estate planning or financial management for the principal or with the known or probable intent of the principal with respect to disposition of the estate.

20 Pa.C.S.A. § 5601.2(e). According to Defendant, because the Uniform Durable Power of Attorney Act provides for only a civil remedy, there can be no criminal consequences.

10

The court finds that this statute does not preclude criminal consequences. Simply because the Durable Power of Attorney Act allows a court the authority to determine what equity and justice require with respect to whether a gift is inconsistent with prudent estate planning or the intent of the principal does not mean that the Commonwealth is precluded from bringing criminal charges against an agent who takes funds from a principal. There are no statutes or cases that preclude prosecution for theft under the circumstances.

Finally, Defendant argues that the charges levied against him violate his right to due process of the law. He states that the present prosecution is an unforeseeable judicial enlargement of the theft statutes which operates precisely like an ex post facto law. According to Defendant, he was not given fair warning at the time of his conduct that his actions were criminal.

The Defendant is charged with theft by unlawful taking, which requires the Commonwealth to prove that he unlawfully exercised control over moveable property of Betty Wetzel with the intent of depriving her of her property. An attorney in fact should understand that taking money of the principal without proper authorization could subject him to prosecution for theft.

Likewise, Defendant is charged with theft by failure to make required disposition of funds. In order to prove this charge, the Commonwealth must show that Defendant obtained property subject to a known legal duty to dispose of the property in a specific fashion and Defendant intentionally failed to make the required disposition. Such actions are exactly what are alleged in this case. The Commonwealth has charged Defendant with taking Ms. Wetzel's money with the knowledge that he must spend the money for her benefit and that he intentionally did not spend the money for her benefit, but instead spent the money as his own. These actions

11

are the type of actions the statute was intended to cover. An attorney in fact should realize that taking a principal's money and using it as his own could subject him to prosecution for theft by failure to make required disposition of funds.

It is important to note that that this court has not decided in this opinion whether the Commonwealth has presented a prima facie case to support the charges against the Defendant. Instead, this opinion merely affirms the legal sufficiency of the Information based upon an assumption that all of the factual averments within the Information are true. Whether the Commonwealth can prove those factual averments is not a question presented to this court by Defendant's Motion to Quash the Information.

Hence, the following Order:

12

IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
                               :         CRIMINAL DIVISION
          vs.                 :
                               :         543 CR 2010
DAVID L. PATTON             :         148 CR 2011
                               :

ORDER OF COURT

AND NOW, July 6, 2011, upon consideration of David L. Patton's Omnibus Pretrial

Motion for Relief at 543 CR 2010, it is hereby ORDERED that the Motion is denied.

BY THE COURT:

JAMES G. ARNER, P.J.

13

Circulated 08/26/2014 04:21 PM

IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
:  CRIMINAL DIVISION
vs. :
: 543 CR 2010
DAVID L. PATTON : 148 CR 2011

## OPINION AND ORDER OF COURT

Arner, J.                                                                September 18, 2012

### I.    Background

These cases came before the court for a non-jury trial on August 27, 2012. They had

been consolidated for trial and the Defendant waived his right to a jury trial. The charges at case

No. 148 CR 2011 originally consisted of 84 counts of §3921(a) Theft by Unlawful Taking and

84 counts of §3927(a) Theft by Failure to Make Required Disposition of Funds Received.

Following a November 7, 2011 Omnibus hearing at case No. 148, this court found that a prima

facie case existed on 56 counts of Theft by Unlawful Taking and 56 counts of Theft by Failure to

Make Required Disposition of Funds Received. The remaining charges at case No. 148 were

dismissed for failure to make out a prima facie case.

The charges at case No. 543 CR 2010 consist of 51 counts of section §3921(a) Theft by

Unlawful Taking and 51 counts of §3927(a) Theft by Failure to Make Required Disposition of

Funds. The Defendant did not file a habeas corpus motion in that case. None of those charges

have been dismissed.

### II.    Issues

Regarding the Theft by Unlawful Taking charges, to establish that the Defendant is guilty

the Commonwealth must prove each of the following four elements beyond a reasonable doubt:

1



first, that the defendant took or exercised control over movable property; second, that the property was movable property of another; third, that the taking or exercising of control was unlawful; and fourth, that the taking or exercising of control was with the intent to deprive Betty Wetzel of her property. The first two elements are not at issue, but the third and fourth are. In particular, the question is did the Commonwealth prove that the Defendant took Betty Wetzel's money unlawfully and with intent to deprive her of the money.

Regarding the Theft by Failure to Make Required Disposition of Funds charges, to establish that the Defendant is guilty the Commonwealth must prove each of the following three elements beyond a reasonable doubt: first, that the defendant obtained property; second, that the defendant obtained this property upon agreement or subject to a known legal obligation to make specified payments or a specified disposition thereof; third, that the defendant intentionally dealt with the property obtained as his own and failed to make the required payment or disposition. The first element is not at issue. The second and third elements are at issue. The specific questions are whether the Commonwealth proved that the Defendant had a legal obligation to use the funds only for Betty Wetzel's benefit, that he knew he had that obligation, and that he failed to meet his obligation.

III.    Facts

At the non-jury trial, counsel for the Commonwealth first read into evidence the Commonwealth's Proposed Stipulation which he had filed on June 28, 2012. He offered in evidence the following documents which are referenced in the Proposed Stipulations: Exhibit A - the report of Linda Mill, an expert in the field of Accounting and Fraud Examination, dated April 4, 2012, Exhibit B1 - the transcript of Betty Wetzel's testimony from June 27, 2012 and Exhibit B2 - the video of her testimony, Exhibit C - expenditures from the Defendant's National City

2

account from 2/13/09 to 7/26/10 and a statement showing the account was opened on 1/30/09, Exhibit D - expenditures from Betty Wetzel's and the Defendant's joint Farmers National Bank account between 2/07 and 3/10, Exhibit E - copies of checks from Betty Wetzel's account and from Her and Defendant's joint account to Country Springs between 1/07 and 3/10, Exhibit F - transcript from preliminary hearing of October 28, 2009, and Exhibit G - transcript of preliminary hearing of March 30, 2011. The Defendant stipulated to the facts as recited by the Commonwealth's counsel and to the admission in evidence of the Exhibits and the court accepted the stipulated facts in evidence. The Commonwealth rested.

Defense counsel offered the following written stipulations which were filed of record on June 28, 2012: Defendant's Proposed Stipulation of Fact for David L. Patton, Defendant's Proposed Stipulation of Fact for the Report of Linda S. Mill, Certified Fraud Examiner, dated April 4, 2012, Defendant's Proposed Stipulation of Fact for the Testimony of Defense Witness David P. Brandt, Esq., Defendant's Proposed Stipulation of Fact for the Testimony of Defense Witness Randy D. Covell, and Defendant's Proposed Stipulation of Fact with Respect to the Introduction of the Power of Attorney Executed by Betty M. Wetzel on January 11, 2007. The Commonwealth stipulated to the facts as stated in the Proposed Stipulations and the court accepted the stipulated facts in evidence. The Defendant rested.

## IV. Law and Analysis

The Defendant argues in defense of the charges in both cases that his transactions were not unlawful and he had no obligation to use the funds only for Betty Wetzel's benefit because Ms. Wetzel had authorized him through the power of attorney to make unlimited gifts, including gifts to himself and others. He relies upon the following language in the power of attorney:

> To the extent that the following powers may not explicitly be set forth hereinabove, I further hereby grant to my said agent the following powers:

3

(1) To make limited or unlimited gifts.

To decide whether the Defendant's transactions were "unlawful" and violated an obligation to use the funds for Ms. Wetzel's benefit it is first necessary to determine whether the Defendant's transactions constituted "unlimited gifts" within the meaning of the Uniform Durable Power of Attorney Act.

The Act at 20 Pa.C.S.A. §5601.2(c) provides, "[A] principal may authorize an agent to make any other gift by specifically providing for and defining the agent's authority in the power of attorney." This subsection follows §5601.2(b) on "limited gifts." The Act does not include a definition or explanation of the term "unlimited gifts," unlike the descriptions of other powers in §5603. Also, it appears our appellate courts have not interpreted the statutory language of §5601.2(c). However, the Comment to §5601.2(c) sheds some light on the meaning of "unlimited gifts." According to the Joint State Government Commission, the legislature added §5601.2(c) for the purpose of overruling the Pennsylvania Supreme Court's decision in *Estate of Reifsneider*, 610 A.2d 958 (Pa. 1992). In particular, the legislature sought to prevent agents from making gifts under powers of attorney which do not specifically provide for that power.

In *Reifsneider*, the Court decided that under the power of attorney statute, a principal wishing to grant one of the powers referred to in the statute did not have to explicitly identify the power by using specific language either identical or similar to statutory language. It held that the statute did not prevent courts from giving effect to general language, which would otherwise be considered to encompass the power identified in statute, merely because language failed to explicitly identify the power. In that case, the power of attorney authorized the attorneys-in-fact to commence legal proceedings touching any matter in which the principal might be in any way concerned and to do all other acts whatsoever regarding principal's estate, property and affairs.

4

The Court found that such language encompassed the act of filing an election to take a share of the estate of principal's deceased spouse.

Upon consideration of the language and legislative history of the §5601.2(c) on "unlimited gifts," it is clear that Betty Wetzel did have the legal authority to permit the Defendant to engage in the transactions that are the subject of these prosecutions. It is also clear from the words of her power of attorney that she did authorize him to make "unlimited gifts." However, there is still a question whether she was also required to specifically state that the Defendant had authority to make gifts to himself in order grant him that power.

This court has concluded that Betty Wetzel did not authorize the Defendant to make gifts to benefit himself and others because she did not state specifically in her power of attorney that he could do so. This conclusion is supported by the language of the §5601.2(c) itself. If the legislature had intended a principal to be able to authorize her agent to make gifts to benefit himself by simply including the words "unlimited gifts" in a power of attorney, it would not have been necessary for the legislature to also require a principal to specifically define the agent's authority.

The conclusion is also supported by the legislative history. The fact that the legislature added §5601.2(c) for the purpose of overruling *Reifsneider* shows its intent to require specific definitions as a means of preventing an agent from exercising specific powers under the auspices of a generally worded power.

In addition, there is another provision of the power of attorney which indicates both Betty Wetzel's and the Defendant's intentions that he would only use the funds for Ms. Wetzel's benefit. The power of attorney contains the following provision:

> I, David L. Patton, have read the attached power of attorney and am the person identified as the agent for the principal. I hereby acknowledge that in the absence

5

of a specific provision to the contrary in the power of attorney or in 20 Pa.C.S. when I act as agent:

I shall exercise the powers for the benefit of the principal.

I shall keep the assets of the principal separate from my assets.

I shall exercise reasonable caution and prudence.

I shall keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

/s/ David L. Patton      1-11-07

David L. Patton, Agent     Date

The Defendant signed this statement indicating his understanding that he was to use the assets for Ms. Wetzel and to keep them separate from his own assets.

Having found that Ms. Wetzel did not authorize the Defendant to make gifts to himself and others which did not benefit her, the next question is whether the gifts were unlawful. The Defendant argues that by making such gifts he did not commit any crimes, citing §5601.2(e) that provides for civil penalties and the fact that the legislature is just now considering changing the law to allow criminal penalties.

The Defendant is correct that the power of attorney statute and the Crimes Code do not contain any specific provisions which criminalize the misuse of a power of attorney. Also, there are no reported appellate court cases on this subject. However, the Superior Court has issued two unreported decisions which help guide this court's analysis.

In *Com. v. Lon H. Bingaman*, 453 MDA 2004 (Pa. Super. 2005) and *Com. v. Eileen C. Bingaman*, 457 MDA 2004 (Pa. Super. 2005), the Superior Court upheld convictions of two defendants on multiple counts of theft for taking approximately $700,000.00 from an elderly aunt of one of the defendants through the use of a power of attorney. The defendants were convicted of theft by unlawful taking or disposition, theft by failure to make required disposition of funds received, and receiving stolen property. The Superior Court affirmed the convictions, reasoning as follows:

6

Accordingly, the evidence was sufficient to sustain the convictions of both Eileen and Lon. The money was intended to benefit Bertha and could be reasonably construed as having been placed in convenience accounts, even though Bertha may have been aware that Eileen had the right to survivorship in the joint accounts. In the meantime, Bertha was alive at the relevant times in this case and the money was intended for her care, not intended for the luxury items benefiting Defendants. Moreover, with regard to Lon's involvement, the record establishes that large transfers of money were being made into accounts he held jointly with Eileen, that he benefited from luxury items they purchased like the two Mercedes vehicles and the RV, and that he accessed Bertha's safe deposit one time to retrieve certain of Bertha's stock certificates. The facts established on the record are sufficient to sustain the verdicts in both cases.

*Id.* at 16.

Although the *Bingaman* cases are not reported and are non-precedential, the same reasoning applies here and leads to a conclusion that misuse of a power of attorney does constitute criminal conduct in Pennsylvania.

Another factor supporting a conclusion that violation of a power of attorney can be a crime, and it is not simply subject to civil penalties, is the language of 18 Pa.C.S.A. §3903 on the grading of theft offenses. Subsection 3903(b) provides that breach of a fiduciary obligation is a factor which must be considered in determining the grading of certain misdemeanor thefts. An agent appointed through a power of attorney occupies a position of trust and has a fiduciary obligation. Misuse of a power of attorney can be "a breach of a fiduciary obligation."

Regarding the charges at case No. 148 CR 2011, this court found in its Opinion and Order of November 30, 2011 on the Defendant's Omnibus Pretrial Motion that the Commonwealth had established prima facie evidence of 56 counts of Theft by Unlawful Taking under §3921(a) and 56 counts of Theft by Failure to Make Required Disposition of Funds Received under §3927(a). The Opinion contains a description and analysis of the transactions.

At the non-jury trial the Commonwealth presented additional evidence. This court now finds that the Commonwealth has proven beyond a reasonable doubt that the Defendant is guilty

7

of each of those same 56 charges of each crime. In particular, the Commonwealth has proven that the Defendant took Betty Wetzel's money unlawfully and with intent to deprive her of the money and that the Defendant had a legal obligation to use the funds only for Betty Wetzel's benefit and he knew he had that obligation and failed to meet it. For each of the two crimes, there are 15 counts graded as felonies of the third degree and 41 counts graded as misdemeanors of the first degree. None are properly graded as misdemeanors of the second degree since they involve breaches of a fiduciary duty.

At case No. 543 CR 2010 there are 51 counts of Theft by Unlawful Taking and 51 counts of Theft by Failure to Make Required Disposition of Funds Received. The Commonwealth has graded all of these charges as third degree felonies. This court cannot consider evidence on eight of those 51 counts because the Commonwealth relied upon that same evidence in connection with the Omnibus Motion at case No. 148. Therefore, there is now evidence of only 43 transactions which the court can consider in ruling on the charges at case No. 543.

The 43 transactions are as follows:

- On 4 occasions the Defendant wrote a check from Betty Wetzel's account to cash and deposited the full amount of the check into his personal account.

- On 4 occasions the Defendant wrote a check from Ms. Wetzel's account to cash, deposited part of it in his personal account and got part of the check back in cash.

- On 16 occasions the Defendant wrote a check from Betty Wetzel's account to cash, then signed the front and back of the check and cashed the check.

- On 2 occasions the Defendant wrote a check to cash and took that along with a third party check issued to Betty Wetzel and received cash for both checks.

8

- On 2 occasions the Defendant redeemed certificates of deposit that were in the name of Betty Wetzel. He then deposited a portion of the funds in Betty Wetzel's account and received a portion back in cash.

- On 3 occasions the Defendant obtained checks issued to Betty Wetzel from Conseco Sr. Health and deposited a portion of the funds into Betty Wetzel's account and received cash back.

- On 1 occasion the Defendant withdrew cash directly from Betty Wetzel's account.

- On 1 occasion the Defendant made a transfer from Betty Wetzel's Farmers National Bank account into her PNC account and received cash back from the transaction.

- On 5 occasions the Defendant made a telephone transfer of funds from Betty Wetzel's account into his personal account.

- On 3 occasions the Defendant wrote checks to a third party for his benefit.

- On 1 occasion the Defendant sent an automated check to the Presque Isle casino in Erie, PA.

- On 1 occasion the Defendant opened a new account in his own name and transferred Betty Wetzel's funds into that account.

A table showing the specific details of each transaction is as follows:

9

Transactions by David Patton on Case 543 CR 2010

| Date | Check # | Amount Misappropriated | Payee / Transaction | Endorsed By | Comments |
|---|---|---|---|---|---|
| | | | | | |
| 5/29/2009 | 268 | 4,000.00 | Cash | Defendant | Deposited into his personal account |
| 9/14/2009 | 278 | 14,000.00 | Cash | Defendant | Deposited into his personal account |
| 10/21/2009 | 345 | 600.00 | Cash | Defendant | Deposited into his personal account |
| 1/25/2010 | 363 | 500.00 | Cash | Defendant | Deposited into his personal account |
| 6/16/2009 | 272 | 4,000.00 | Cash | Defendant | Deposited part into his personal account and received cash back for the balance. |
| 7/2/2009 | 275 | 6,500.00 | Cash | Defendant | Deposited part into his personal account and received cash back for the balance. |
| 10/5/2009 | 280 | 2,000.00 | Cash | Defendant | Deposited part into his personal account and received cash back for the balance. |
| 10/26/2009 | 348 | 3,000.00 | Cash | Defendant | Deposited part into his personal account and received cash back for the balance. |
| 5/15/2009 | 1250 | 250.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 12/30/2009 | 1323 | 400.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 12/31/2009 | 1324 | 350.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 5/21/2009 | 267 | 857.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| Jun-09 | 270 | 3,500.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |

10

| | | | | | |
|---|---|---|---|---|---|
| 6/12/2009 | 271 | 2,500.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 10/23/2009 | 347 | 500.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 11/13/2009 | 352 | 1,000.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 11/20/2009 | 353 | 3,000.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 12/2/2009 | 357 | 1,000.00 | Cash | Defendant · | Wrote check for cash and signed the front and back of the check. |
| 12/4/2009 | 359 | 1,000.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 12/9/2009 | 360 | 1,000.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 1/19/2010 | 362 | 1,500.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 3/1/2010 | 368 | 2,500.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 3/11/10 | 311 | 1,000.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 3/15/10 | 221 | 1,000.00 | Cash | Defendant | Wrote check for cash and signed the front and back of the check. |
| 9/25/2009 | 279 | 3000 | Cash & Swiss Check | Defendant | Wrote check 279 for cash. Received cash for check 279 and Swiss Check written payable to Betty Wetzel. |
| 11/6/2009 | 351 | 1000 | Cash & AXA Check | Defendant | Wrote check 351 for cash. Received cash for check 351 and AXA Check written payable to Betty Wetzel. |
| 4/20/2009 | CD Deposit | 3,605 | CD Redemption | Defendant | CD redeemed. Part deposited in Betty Wetzel's account and Defendant |

11

| | | | | | received cash back. |
|---|---|---|---|---|---|
| 5/27/2009 | CD Deposit | 2,795 | CD Redeption | Defendant | CD redeemed. Part deposited in Betty Wetzel's account and Defendant received cash back. |
| 1/3/2008 | | 1500 | Conseco | Defendant | Deposit w/ Cashback |
| 10/6/2008 | | 1000 | Conseco | Defendant | Deposit w/ Cashback |
| 3/5/2009 | | 2675 | Conseco | Defendant | Deposit w/ Cashback |
| 5/13/2009 | | 5000 | Withdrawal | Defendant | Withdrawl from Betty Wetzel's account. |
| 7/13/2009 | | 2000 | Cashback | Defendant | Deposit into Betty Wetzel PNC account from her Farmers account w/ Defendant receiving cash back. |
| 11/10/2009 | | 3000 | Telephone Transfer | | Transferred funds from Betty Wetzel's account to his personal account. |
| 11/20/2009 | | 2000 | Telephone Transfer | | Transferred funds from Betty Wetzel's account to his personal account. |
| 11/24/2009 | | 2000 | Telephone Transfer | | Transferred funds from Betty Wetzel's account to his personal account. |
| 12/17/2009 | | 500 | Telephone Transfer | | Transferred funds from Betty Wetzel's account to his personal account. |
| 3/1/2010 | | 5000 | Telephone Transfer | | Transferred funds from Betty Wetzel's account to his personal account. |
| 11/4/2009 | 1315 | 1020 | Clarion County Sportsman | Defendant | Third Party Check |
| 12/10/09 | 358 | 80.93 | Oneil's Quality Foods | Defendant | Third Party Check |
| 3/1/2010 | 369 | 784.35 | Sportsman's Outfitters | Defendant | Third Party Check |
| 3/2/2010 | 1334 | 400 | Presque Isle (Casino) | Defendant | Automated check to casino. |
| 5/8/2009 | Debit | 25000 | Transfer | Defendant | Opened new account in his name only and transferred the funds to it from Betty Wetzel's account. |

12

Betty Wetzel testified that she did not receive any benefit from checks written to cash and that Defendant rarely brought her any cash. When the Defendant did bring her cash the amounts were small and never more than $500.00. Sixteen of the transactions involved the Defendant writing a check from Betty Wetzel's account for cash and then receiving the full amount of the check in cash. Of those sixteen transactions that involved the Defendant receiving the full amount of the transaction back in cash, twelve were in excess of $500.00, indicating the cash was only for the benefit of the Defendant. Four of the transactions were for $500.00, $400.00, $350.00, and $250.00. Since these four checks were $500.00 or under it is possible he cashed them for the benefit of Betty Wetzel.

On two other occasions, the Defendant cashed a check that was issued to cash and endorsed by him and he cashed a check from AXA Equitable life or Swiss Re Life & Health America issued to Betty Wetzel. These two transactions were for $3,000.00 and $1,000.00. In addition, one transaction involved the Defendant making a cash withdrawal of $5,000.00 from Betty Wetzel's account. There is no evidence that these transactions were for the benefit of Betty Wetzel.

On several occasions, the Defendant deposited funds into the account of Betty Wetzel and received cash back. On each occasion, the total amount of cash back was over $500.00. There is no evidence that the cash back in these transactions was for the benefit of Betty Wetzel.

Fourteen of the transactions involved the Defendant depositing either all or a portion of a check written from Betty Wetzel's account to cash into his personal account or transferring money from Betty Wetzel's accounts directly into his personal account. In the course of producing her report, Ms. Mill reviewed the Defendant's account activity. There is no indication that any of the funds deposited into his account were for the benefit of Betty Wetzel.

13

Next, there is evidence that the three checks written to Clarion County Sportsmen for Youth, O'Neil's Quality Foods, and Sportsman's Outfitters and the automated check to Presque Isle Casino were also for the sole benefit of the Defendant. The Defendant signed each check. In her investigations, Ms. Mill reviewed the Defendant's accounts. She was able to locate several similar checks written from the Defendant's own personal account to the same payees. This along with her interview of Betty Wetzel led her to the conclusion that the checks were for the sole benefit of the Defendant.

This evidence supports a finding of proof beyond a reasonable doubt and convictions on 39 counts of both §3921(a) and §3927(a). The other four transactions are checks written for cash in amounts of $500.00 or less. It is possible, based on the testimony of Betty Wetzel, that the Defendant used this cash to benefit the Defendant.

Pursuant to 18 Pa.C.S.A. §3903(a.1), thefts that exceed $2,000 are felonies of the third degree. Otherwise, theft constitutes a misdemeanor of the first degree; except that if the property was not taken from the person or by threat or in breach of fiduciary obligation and the amount taken was between $200 and $50 the theft is a misdemeanor of the second degree or if the amount involved is less than $50, the offense constitutes a misdemeanor of the third degree.

Regarding the grading of the crimes in both cases, at case No. 148 for each of the two crimes there are 15 counts graded as felonies of the third degree and 41 counts graded as misdemeanors of the first degree. None are properly graded as misdemeanors of the second degree since they involve breaches of a fiduciary duty. At case No. 543, the 39 counts of §3921(a) and §3927(a) are comprised of 15 felonies of the third degree and 24 misdemeanors of the first degree.

Hence, the following Order:

14

IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :

vs. :  CRIMINAL DIVISION

DAVID L. PATTON  :  543 CR 2010 and 148 CR 2011

  :

## ORDER

AND NOW, September 18, 2012, following a non-jury trial, the court finds on proof beyond a reasonable doubt that the Defendant is guilty of a total of ninety five (95) counts of Theft by Unlawful Taking under 18 Pa.C.S.A. §3921(a) and ninety five (95) counts of Theft by Failure to Make Required Disposition of Funds Received under 18 Pa.C.S.A. §3927(a). Of the ninety five (95) counts of each crime, thirty (30) counts are graded as felonies of the third degree and sixty five (65) as misdemeanors of the first degree.

At case No. 543 CR 2010, the court finds the Defendant not guilty of four (4) counts of each crime.

The Defendant shall report to the Adult Probation Office for the preparation of a Presentence Investigation Report and appear for sentencing in Courtroom No. 1, Clarion County Courthouse at 9:00 a.m. on October 24, 2012.

BY THE COURT:

JAMES G. ARNER, P.J.

15

IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :

vs. :

DAVID L. PATTON :

CRIMINAL DIVISION

543 CR 2010 and 148 CR 2011

OPINION PURSUANT TO Pa.R.A.P. 1925(a)

Arner, J.

February 13, 2013

### I. Background

The charges against the Defendant originated from his use of a Power of Attorney granted to him by his elderly aunt, Betty Wetzel. At case 543 CR 2010, the Commonwealth alleged that the Defendant took approximately $124,000.00 from Wetzel's accounts for his own use between January 11, 2007 and March 15, 2010. At case 148 CR 2011, the Commonwealth alleged that he took $156,861.70 from Wetzel's accounts between January of 2007 and May of 2010. The total amount allegedly taken was $280,861.70. The cases were consolidated.

I conducted a non-jury trial on August 27, 2012 and found on proof beyond a reasonable doubt that the Defendant was guilty of a total of 95 counts of Theft by Unlawful Taking under 18 Pa.C.S.A. §3921(a) and 95 counts of Theft by Failure to Make Required Disposition of Funds Received under 18 Pa.C.S.A. §3927(a). Of the 95 counts of each crime, 30 counts were graded as felonies of the third degree and 65 as misdemeanors of the first degree. At case No. 543 CR 2010, I found the Defendant not guilty of four counts of each crime.

1

On October 24, 2012, I sentenced the Defendant to an aggregate period of incarceration of not less than 30 months nor more than 60 months to be followed by a consecutive period of probation of 10 years. I ordered the Defendant to pay restitution of $202,489.62 to Betty Wetzel. I issued an Amending Order on November 6, 2012, changing the number of counts of the specific crimes, but not changing the total number of counts or the periods of incarceration and probation. The Defendant has appealed the Sentence Order and Amending Order.

## II.    Issues

In his Concise Statement of Errors Complained of on Appeal, in paragraph 2, the Defendant alleges that I committed error because:

1. I denied the Defendant's Omnibus Pretrial Motions.

2. I failed to consider the parties' written stipulations of facts, especially those of the Defendant which indicate an uncontroverted defense.

3. I failed to rule that the Power of Attorney authorized the Defendant to make limited as well as unlimited gifts under Title 20 Consolidated Statutes. I failed to rule that if the Defendant did violate the Power of Attorney, the proper remedy would be removal from that position rather than criminal sanctions, since criminal sanctions are not provided for by statute. I failed to hold that the Defendant was acting within the scope and pursuant to the authority granted him by the Power of Attorney.

4. I relied upon unreported and unprecedented decisions.

5. The evidence presented at the non-jury trial was insufficient to support the verdict.

III.     Analysis

A. First Issue -- Omnibus Motions

On January 14, 2011, the Defendant filed his first Omnibus Motion at case 543 CR 2010. The Defendant sought to quash the Information for the reasons that he was acting lawfully pursuant to powers granted to him to make unlimited gifts, the law does not provide for criminal sanctions, and his due process rights were violated because he had no notice that his actions would be considered criminal. I held a hearing and denied the Motion. I issued an Opinion and Order on July 6, 2011 in which I explained the reasons for my decision. There is no reason to supplement that Opinion.

The Defendant filed a second separate Omnibus Motion at case 148 CR 2011 on June 17, 2011. The Defendant requested dismissal of the charges for failure of the Commonwealth to establish a *prima facie* case at the preliminary hearing because the evidence consisted only of hearsay. I held a hearing and found that there was more than just hearsay evidence. I issued an Order of September 6, 2011, explaining my decision. I also found that the attorneys had focused on the hearsay issue and had not addressed the question whether the Commonwealth had presented a *prima facie* case. I scheduled oral argument and then by subsequent Order, an evidentiary hearing. Following the hearing, I issued an Opinion and Order on November 30, 2011, granting the Motion in part and denying it in part. I see no need to supplement that Opinion and Order. The Defendant's appeal based on my rulings on his Omnibus Motions should be denied.

B. Second Issue - Stipulations

Next, the Defendant argues that I failed to consider the parties' written

3

stipulations of facts, especially those of the Defendant which indicate an uncontroverted defense. The Defendant's primary defense is that Betty Wetzel authorized him through the written Power of Attorney to make gifts, including gifts to himself and others, regardless whether they benefited her. He argues in the alternative that even if he lacked such authority, there is no law that makes his conduct criminal.

When I reviewed the record from the non-jury trial to decide whether the Commonwealth proved the Defendant guilty, I considered all the Stipulations, as indicated on pages 2 and 3 of my Opinion of September 18, 2012. However, only those facts concerning the question whether Betty Wetzel authorized the transactions were relevant to my decision. The relevant facts were the language of the Power of Attorney, the checks the Defendant wrote, and Betty Wetzel's deposition testimony that she did not authorize the Defendant to take money for himself or receive any benefit from certain transactions. I incorporated those facts in my analysis on pages 3 through 14 of my Opinion.

In his Statement of Matters Complained Of, the Defendant has not made reference to any particular facts that I failed to consider. He has not stated which other facts would have made a difference in the outcome of these cases. In response to the general allegation of error, I offer the following comments.

As to Defendant's Proposed Stipulation of Fact for David L. Patton, stipulations one through ten are irrelevant to a determination whether Betty Wetzel authorized the transactions. Stipulations eleven through fifteen are conclusions of law. They are not statements of facts which relate to the nature and extent of the Defendant's authority.

Regarding the Defendant's Proposed Stipulation of Fact for the Report of Linda

4

S. Mill, Certified Fraud Examiner, stipulations one through seven are irrelevant because it was not Ms. Mill's job to determine if the Defendant did or did not have authority to make the transactions. In stipulations eight through ten, the Defendant notes the failure of Ms. Mill to consider certain facts or to make certain findings. However, even if she had done so, her report would not have made the existence of the fact that the Defendant took the money for his own purposes and Betty Wetzel did not benefit from the transactions more or less probable than it would without the evidence.

The next stipulation was the Proposed Stipulation of Fact for the Testimony of Defense Witness David P. Brandt, Esq. Mr. Brandt testified at the Omnibus hearing on May 2, 2011 and a copy of the transcript of his testimony is attached to the Proposed Stipulation. He testified that when he met with Betty Wetzel she read the Power of Attorney form he had prepared, which included a provision granting general powers and a listing and description of twenty three specific powers. The power to make gifts was unconditional. Mr. Brandt testified that he explained to Ms. Wetzel that this power of attorney would enable Mr. Patton to do anything she could do. The power of attorney was a durable general power of attorney. Betty Wetzel read and signed the form.

On cross examination, attorney Brandt admitted that other provisions of the Power of Attorney do place conditions on the power to make gifts. The agent must use due care and act for the benefit of the principal. He must keep the assets of the principal separate from his own and keep an accurate record of all receipts and disbursements. Mr. Brandt noted that there is nothing explicitly in the document that refers to any criminal penalties.

It is important to note what Mr. Brandt did not say. He did not say that he

5

specifically discussed the power to make gifts with Betty Wetzel and the Defendant. He did not say that he told them that the Defendant could take her money for his own use. He did not give an opinion that Ms. Wetzel's Power of Attorney or the law gave the Defendant the power to use Ms. Wetzel's money as his own. For these reasons, attorney Brandt's testimony did not support the Defendant's argument that he was authorized to do what he did. Also, the fact that the Power of Attorney does not mention criminal sanctions does not establish that criminal prosecutions are prohibited by law.

The next Stipulation was the Proposed Stipulation of Fact for the Testimony of Randy D. Covell. Mr. Covell was a financial advisor with PNC Investments who assisted Betty Wetzel. Stipulations one, two, four, five and seven describe his role and his interpretation of the power to make gifts and they do not tend to prove or disprove the Defendant's defenses. In stipulations three, six and eight, Mr. Covell simply states that Betty Wetzel authorized PNC to release her funds to the Defendant in furtherance of the powers she had granted him. Such facts do not establish that the language of the Power of Attorney or the law authorized the Defendant to use Ms. Wetzel's funds at PNC for his own wants or that he cannot be criminally prosecuted for doing so.

The final Stipulation offered at trial by the defense was the Proposed Stipulation of Fact with Respect to the Introduction of the Power of Attorney Executed by Betty M. Wetzel on January 11, 2007. Stipulations one, two, three, four, six and seven simply confirm that Betty Wetzel knowingly executed a Power of Attorney giving the Defendant certain standard powers.

In stipulation five, the Defendant notes that the paragraph on the power to make gifts does not provide specifically that gifts must be made for Betty Wetzel's benefit, but

6

he also notes that another provision does indicate that the powers had to be exercised for her benefit. These facts do not support the Defendant's defenses. In part of stipulation number six, defense counsel argues that the sole remedy provided for in the Power of Attorney for a violation by an agent is removal by the court and the Defendant was not notified his conduct could result in criminal prosecution.

It is my position that a criminal prosecution is not predicated on the Defendant receiving notice in advance through the Power of Attorney document that he could be prosecuted for appropriating his elderly aunt's money. He did not need to be notified in writing to know that he could be charged with theft for taking for his own personal use over $200,000 of Betty Wetzel's life's savings, using some of it to go gambling in Erie, and depriving her of sufficient funds to pay for her nursing home care in her old age.

C. Third Issue – Language of Power of Attorney

Next, in paragraph 2(C) of the Statement of Matters Complained Of the Defendant challenges my verdict on the basis that I failed to properly interpret the language of the document. First, he contends I should have ruled that the Power of Attorney authorized the Defendant to make limited as well as unlimited gifts. I did find that Betty Wetzel had authorized unlimited gifts, but only for her benefit, and the subject transactions did not fall within that category. As for limited gifts, Section 5601.2(b) on "Limited gifts" provides that a principal may authorize an agent to make a limited gift as defined under section 5603(a)(2). Section 5603(2)(i) through (v) provides for circumstances which do not apply in this case. The Defendant has not stated how they may apply. There was no need to make a ruling concerning "limited gifts."

Next, the Defendant argues that I failed to rule that if the Defendant did violate

7

the Power of Attorney, the proper remedy would be removal from that position rather than criminal sanctions, since criminal sanctions are not provided for by statute. The Defendant is incorrect. I did address and decide this issue on pages 6 and 7 of my Opinion of September 18, 2012.

Finally, he asserts that I erred by failing to hold that the Defendant was acting within the scope and pursuant to the authority granted him by the Power of Attorney. It is clear that the Defendant was not acting within the scope and pursuant to the authority granted him by the Power of Attorney. I rely upon the reasons I expressed for that conclusion in my Opinion and Order.

## D. Fourth Issue – Unreported Decisions

I did not state in my Opinion that I was relying on the holdings in *Com. v. Lon H. Bingaman*, 453 MDA 2004 (Pa. Super. 2005) and *Com. v. Eileen C. Bingaman*, 457 MDA 2004 (Pa. Super. 2005) as binding precedent. Instead, I stated, "[A]lthough the *Bingaman* cases are not reported and are non-precedential, the same reasoning applies here and leads to a conclusion that misuse of a power of attorney does constitute criminal conduct in Pennsylvania." The fact that the cases were unreported does not mean the reasoning of the Superior Court was invalid or could not guide my own reasoning in arriving at a decision on the criminality of the Defendant's conduct.

## E. Fifth Issue – Sufficiency of the Evidence

In *Com. v. Fabian*, 2013 WL 139254, 3 (Pa. Super. 2013), the Superior Court recited the standard of review on sufficiency of the evidence claims as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

8

I found, as stated on pages 7 and 8 of my Opinion, that there was sufficient evidence to enable me to find every element of the crimes beyond a reasonable doubt. There is sufficient evidence to support the convictions.

I respectfully request that the Superior Court affirm the verdict and sentence.

BY THE COURT:

_____
JAMES G. ARNER, P.J.

9

